18 U.S. 128 (____)
5 Wheat. 128
MANDEVILLE
v.
WELCH.
Supreme Court of United States.

*129 *March 2d. Swann and Taylor, for the plaintiffs in error.
*131 March 7th, 1820. STORY, Justice, delivered the opinion of the court.
Two questions arise upon the instruction to the jury: 1. Whether the bills were primâ facie evidence that value had been paid for them by Prior to Welch? 2. Whether, under all the circumstances of the case, Prior was an assignee in equity, entitled to maintain the present action?
Upon the first point, we are of opinion, that the law was correctly laid down by the court below. The argument of the defendant's counsel admits, that where a bill imports, on its face, to be for "value received," it is primâ facie evidence of that fact, between the original parties; but it is stated, that it is not evidence of the fact against third persons. We know of no such distinction. In all cases, where the bill can be used as evidence either against the parties, or against third persons, the same legal presumption arises, of its having been given for value received, as exists in relation to a deed expressed to be given for a valuable consideration. In this respect, bills of exchange and negotiable notes are *distinguished from all [*285 other parol contracts, by authorities which are not now to be questioned. Chitty on Bills (2d edit.) 12, 62; 1 Wils. 189; 3 Burr. 1516; 1 Salk. 25; 1 Bos. & Pul. 651.
The other question requires more consideration, though it does not, in our judgment, present any intrinsic difficulty. It has been long since settled, that were a chose in action is assigned by the owner, he shall not be permitted, fraudulently, to interfere and defeat the rights of the assignee, in the prosecution of any suit to enforce those rights. And it has not been deemed to make any difference, whether the assignment be good at law, or in equity only. This doctrine was fully recognised by this court when this case was formerly before us. (1 Wheat. 235) It was then applied to a case, where the whole chose in action was alleged to have been assigned; and it was certainly then supposed, that the doctrine in courts of law had never been pressed to a greater extent. We are now called upon to press it still further, so as to embrace cases of partial assignments of choses in action.
It is contended on behalf of the plaintiff, in the first place, that the facts of this case establish, by legal inference, that the articles of agreement were entirely assigned in equity to the plaintiff. If this ground fails, it is, in the next place, contended, that an assignment was made of the debt due by the articles, to the extent of $7500, the amount of the bills drawn on Mandeville & Jamesson, and that *this, per se, authorizes Prior to [*286 sustain the present action.
In support of the first position, it is argued, that the bills being primâ facie evidence of an equivalent advance made by Prior, the possession, by *132 the latter, of the articles of agreement, and the delivery to him of the account signed by Mandeville & Jamesson, afford a legal presumption, that the articles and account were delivered to him as security for the payment of such advance, and thereby he acquired a lien on them, like that acquired by the delivery of title-deeds as security for a debt, which lien has always been deemed to be equivalent to an equitable mortgage. It may be admitted, that according to the course of the authorities in England, and as applicable to the state of land-titles there, a deposit of title-deeds does, in the cases alluded to, create a lien, which will be recognised as an equitable mortgage, and will entitle the party to call for an assignment of the property included in the title-deeds.[1] It may also be admitted, that a deposit of a note, not negotiable, as security for a debt, will entitle the creditor, after notice to the maker, to enforce, in equity, his lien against the depositor, and his assigness in bankruptcy. Such was the case cited at the bar from Atkyn's reports.[(a)] But in cases of this nature, the doctrine proceeds upon the supposition, that the deposit is clearly established to have been made as security for the debt; and not upon the ground, that the mere fact of a *287] deposit, unexplained, affords such proof. In *the case at the bar, it was not proved, that the articles were delivered by Welch to Prior at all, much less that they were delivered as security for the bills. The delivery of the account is certainly an equivocal act, and might have been as a voucher of the right of Welch to draw on Mandeville & Jamesson. There is this further deficiency in the proof, that the bills do not appear ever to have been presented to the drawees for acceptance, which not only rebuts the presumption, from the face of the bills, that they were received for value (since a bonâ fide holder could not be supposed guilty of such fatal laches), but draws after it the auxiliary presumption, that they were in the hands of Prior, as agent, and therefore, that he had not any assignment of the articles as security. And it may be added, that the suit commenced in chancery, by Prior, for this very debt, and afterwards discontinued, does not assert any assigned title in himself, but proceeds against Mandeville & Jamesson, as the mere debtors of Welch. Under such circumstances, this court cannot say, that the instruction of the circuit court was correct, that the jury ought to infer, that Prior was an assignee, entitled to sue for the whole debt due upon the articles.
The ground, then, that there was a deposit of the articles, as collateral security, failing, we are next led to examine the position of the defendant's counsel, that there was a partial lien or appropriation of the debt due from Mandeville & Jamesson, under the articles, to the extent of the sum due on *288] the bills, which is equivalent to an equitable assignment of so *much of the debt. It is said, that a bill of exchange is, in theory, an assignment to the payee of a debt due from the drawee to the drawer. This is undoubtedly true, where the bill has been accepted, whether it be drawn on general funds, or a specific fund, and whether the bill be, in its own nature, *133 negotiable or not; for, in such a case, the acceptor, by his assent, binds and appropriated the funds for the use of the payee. And to this effect are the authorities cited at the bar. Yeates v. Groves, 1 Ves. jr. 280; Gibson v. Minet, per EYRE, C.J., 1 H. Bl. 569, 602; Tatlock v. Harris, 3 T.R. 174. In cases also, where an order is drawn for the whole of a particular fund, it amounts to an equitable assignment of that fund, and after notice to the drawee, it binds the fund in his hands. But where the order is drawn, either on a general, or a particular fund, for a part only, it does not amount to an assignment of that part, or give a lien, as against the drawee, unless he consent to the appropriation, by an acceptance of the draft; or an obligation to accept may be fairly implied from the custom of trade, or the course of business between the parties, as a part of their contract. The reason of this principle is plain. A creditor shall not be permitted to split up a single cause of action into many actions, without the assent of his debtor, since it may subject him to many embarrassments and responsibilities, not contemplated in his original contract. He has a right to stand upon the singleness of his original contract, and to decline any legal or equitable assignments, by which it may be broken *into fragments. When he undertakes to [*289 pay an integral sum to his creditor, it is no part of his contract, that he shall be obliged to pay in fractions to any other persons.[1] So that, if the plaintiff could show a partial assignment to the extent of the bills, it would not avail him in support of the present suit. But in the present case, there is no proof any presentment of the bills, much less of any acceptance by the defendant, to establish even a partial assignment of the debt. And if there were, it would still be necessary to show, that there was an assignment of the articles, as an attendant security, before the plaintiff could found his action upon them. Indeed, by the very terms of the pleadings, the plaintiff undertakes to establish an assignment of the whole debt due by the articles; and if he fails in this, there is an end to his recovery. So that, in whatever view we contemplate the facts of this case, or the law applicable to it, the plaintiff has not shown any sufficient title to sustain his replication to the fourth plea.
Several other objections have been taken at the bar, to the plaintiff's right of recovery, which under other circumstances would have deserved serious consideration; but as, upon the merits of the case, as they are apparent upon the record, the judgment of this court is decidedly against the plaintiff, it is unnecessary to give any opinion upon those objections.
Judgment reversed.
JUDGMENT.  This cause came on to be heard, on *the transcript [*290 of the record of the circuit court for the district of Columbia, in the county of Alexandria, and was argued by counsel: on consideration whereof, this court is of opinion, that the said circuit court erred, in instructing the jury, "that if they should be of opinion, from the evidence, that the said bills were drawn for the full and valuable consideration expressed on the face of them, paid by the said Prior to the said Welch, and if there be no other evidence than what is herein before stated, they ought to infer from the said evidence, that the said Prior was, and is, such an assignee of the *134 right of action upon the covenant aforesaid, as authorizes him to sustain the action in the name of the said Welch's administrator, for the whole debt due by the said covenant, at the time of the said Welch's delivering the said account to the said Prior:" it is, therefore, adjudged and ordered, that the judgment of the said circuit court in this case be, and the same is hereby reversed and annulled: and it is further ordered, that the said cause be remanded to the said circuit court, with directions to issue a venire facias de novo.
NOTES
[1] In Pennsylvania, an equitable mortgage cannot be created by a deposit of title-deeds. Bowers v. Oyster, 3 P. & W. 239; Shitz v. Diffenbach, 3 Penn. St. 233. Nevertheless, a court of equity will not enforce a return of them, without performance of the condition. Sidney v. Stevenson, 11 Phila. 178.
[(a)] Ex parte Byas, 1 Atk. 148.
[1] See Jermyn v. Moffitt, 75 Penn. St. 399.